# EXHIBIT 1

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
2633 E. Indian School Road, Suite 460
Phoenix, AZ 85016
Telephone: (602) 265-3332
Facsimile: (602) 230-4482
Veronica Cruz, Esq. (SBN: 318648)
veronica@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Aaron Hicks

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE (LIMITED JURISDICTION)

| | |
|---|---|
| **AARON HICKS, an individual,**<br><br>Plaintiff,<br><br>v.<br><br>**ONE TECHNOLOGIES, LLC d/b/a Freescore360.com, a Texas limited liability corporation; and DOES 1-100, inclusive,**<br><br>Defendant. | Case No.: **30-2020-01146358-CL-MC-CJC**<br><br>**COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**<br><br>**[LIMITED JURISDICTION: AMOUNT UP TO $25,000]**<br><br>**JURY TRIAL DEMANDED** |

*(left margin vertical text)* KAZEROUNI LAW GROUP, APC / 245 FISCHER AVENUE, SUITE D1 / COSTA MESA, CA 92626

**COMPLAINT**

# I. <u>INTRODUCTION</u>

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* California Business & Professions ("Bus. & Prof.") Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem.   California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." Bus. & Prof. Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley.* 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).

# II. <u>SUMMARY OF THE COMPLAINT</u>

5. Plaintiff AARON HICKS ("Plaintiff") brings this Action against Defendant ONE TECHNOLOGIES, LLC d/b/a Freescore360.com, a Texas Corporation and DOES 1-100 (collectively, "Defendant") for advertising in *at least* twenty-five (25) unsolicited

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

commercial emails[1] (*i.e.*, "spams") sent to Plaintiff's California email address beginning on or about July 2019 in violation of Bus. & Prof. Code § 17529.5 ("Section 17529.5").

6.  The spam e-mails sent by Defendant and Defendant's marketing agents materially violated Bus. & Prof. Code § 17529.5 because there was materially false and deceptive information contained in or accompanying the e-mail headers, specifically the use of third-party domain names in the Sender E-mail Address of each of the spam e-mails.

7.  Specifically, the spam e-mails violate Section 17529.5(a)(1) because they contain or are accompanied by a third-party domain name without the permission of the third party. The third-party domain names used include *blueshieldca.com, unitau.br, centauro.br.com, and msi.com.*

8.  Moreover, the spam emails violate Section 17529.5(a)(2) because the emails contain or are accompanied by falsified, misrepresented, or forged header information in violation of Section 17529.5(a)(2). The emails were sent from a generic "From Name" (*e.g.*, "AARONTHICKS" and "CONFIRM AARONTHICKS"), which have untraceable domain names, and the sender's identity is not readily ascertainable from the emails.

9.  Further, the spam emails violate Section 17529.5(a)(3) because they contain Subject Lines that are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the content or subject matter of the email.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

11. All of the offending spam e-mails were sent to a California e-mail address. [2]

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(o)(1)-(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

12. Plaintiff never gave "direct consent"[3] as required by Bus. & Prof. Code § 17529.1(d) to receive commercial e-mail advertisements from, or had a "preexisting or current business relationship"[4] pursuant to Bus. & Prof. Code § 17529.1(*l*) with Defendant.

13. Defendant is strictly liable for advertising in spams sent by its third-party marketing agents, as are the marketing agents themselves. Third-party marketing agents are also liable.

14. Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spams. *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

15. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

16. This Court should award Plaintiff liquidated statutory damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

17. This Court should award Plaintiff attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).

### III. PARTIES

#### A. Plaintiff AARON HICKS

18. Plaintiff is now, and at all times relevant has been, an individual domiciled in the State of California, County of Orange.

19. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection.  This computer is located in the State of California.

---

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser.  Bus. & Prof. Code § 17529.1(*l*).

20.   Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address *Aaron\*\*\*\*\*\*@gmail.com.*[5]

21.   Plaintiff ordinarily accesses these e-mail accounts from California.

22.   Plaintiff is a "recipient"[6] as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

23.   Plaintiff received unlawful unsolicited commercial emails (defined above as "spams) linking to Defendant's web page at *freescore360.com.* Plaintiff did not give direct consent to any of the Defendants to send Plaintiff any commercial email advertising.

**B.   Defendant ONE TECHNOLOGIES, LLC d/b/a Freescore360.com.**

24.   Defendant ONE TECHNOLOGIES, LLC d/b/a Freescore360.com is a privately held corporation with its principal place of business at 8144 Walnut Hill LN Ste. 600, Dallas, TX 75231-4345.

25.   At all times material to this Complaint, ONE TECHNOLOGIES, LLC d/b/a Freescore360.com has owned and operated the website *freescore360.com.*

26.   ONE TECHNOLOGIES, LLC d/b/a Freescore360.com transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of the spam emails.

27.   ONE TECHNOLOGIES, LLC d/b/a Freescore360.com is an "advertiser" as defined by Bus. & Prof. Code § 17529.1(a) in each of the e-mails received by Plaintiff.

**E.   DOE Defendants**

28.   Plaintiff does not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

---

[5] Plaintiff's e-mail address has been partially redacted for privacy and will be made available to Defendant(s) when an appearance is made in this matter.

[6] "Recipient" means the addressee of an unsolicited commercial e-mail advertisement. If an addressee of an unsolicited commercial e-mail advertisement has one or more e-mail addresses to which an unsolicited commercial e-mail advertisement is sent, the addressee shall be deemed to be a separate recipient for each e-mail address to which the e-mail advertisement is sent. *See* Bus. & Prof. Code § 17529.1(m).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

29. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiff complains.

30. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this Complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiff will seek to amend this Complaint to allege their identity and involvement with particularity.

## IV.  **JURISDICTION AND VENUE**

31. This Court has jurisdiction over the Action because Plaintiff is domiciled in and a citizen of California, and Plaintiff received the unlawful spams in California.

32. Plaintiff is a California resident who received the emails in California and has thus been harmed in California.

33. Defendant transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of the spam emails.

34. The amount in controversy, exclusive of fees and costs, does not exceed $25,000.

35. Plaintiff is informed and believes and thereon alleges that Defendant advertised in numerous spam emails sent to California residents, including Plaintiff.

36. Plaintiff is informed and believes and thereon alleges that Defendant hired, conspired, partnered or joint ventured with unknown third parties to send these spam emails to California residents, including Plaintiff, in order to advertise its products and/or services.

37. Plaintiff is informed and believes and thereon alleges that Defendant was aware or should have been aware that its agents, co-conspirators, partners, joint venturers were sending spam emails advertising their services to California residents.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

38. Plaintiff is informed and believes and thereon alleges that Defendant created and engaged in an ongoing relationship in California related to the distribution of the spam emails.

39. Plaintiff is informed and believes and thereon alleges that Defendant caused to be sent numerous spam emails to the email servers of Google, LLC, a Delaware LLC, with email servers in Mountain View, California.

40. Plaintiff is further informed and believes and thereon alleges that the spam e-mails at issue contain remote images and hyperlinks that allow Defendant and its marketing affiliates to collect "click reports" which aggregate various types of data whenever the e-mails are opened or the hyperlinks are clicked by a recipient. These click reports also allow Defendant and its marketing affiliates to review the IP addresses of individuals who click on the hyperlinks in the spam e-mails, including their location in California, and Defendant and its marketing affiliates thereby intentionally availed themselves of the benefits and protections of California and knowingly targeted and/or transacted business with residents of California via commercial e-mail, such as Plaintiff.

41. Venue is proper in Orange County because Plaintiff received the unlawful spams at issue in Orange County. Thus, the cause of action arose in Orange County.  Code Civ. Proc. §§ 395 (b) and 395.5.

> For purposes of laying venue, a liability 'arises' where the injury occurs. . . . The 'obligation or liability' provision of section 395.5 does *not* require that the defendant perform any act inside the county for venue to be proper; it merely requires that *the obligation arise there.*

*Black Diamond Asphalt Inc. v. Superior Court of San Joaquin* County, 109 Cal. App 4th 166, 172, 173 (3d Dist. 2003) (internal citations omitted, emphasis added). Here, Defendant's obligations arose in Orange County, where Plaintiff received the spams.

## V. <u>TECHNICAL BACKGROUND</u>

42. "A 'domain name' is defined by an 'alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet.'"

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**COMPLAINT**

*Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1090 fn. 6 (quoting Bus. & Prof. Code § 17529.1 subd. (e)).

43. "WHOIS" refers to the means of determining the identity of a domain registrant. "Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name." *Solid Host NL v. NameCheap, Inc.*, 652 F. Supp. 2d 1092, 1095 fn. 3 (C.D.Cal. 2009) (citing Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'Y 279, 313 (2005)).

44. "To secure the creation, registration, and use of a domain name, one must first assent to the registrar's contract. In addition to the payment of a small fee, the contract requires a potential registrant to agree to (1) provide and maintain current and accurate identifying information…" *In re Forchion*, 198 Cal. App. 4th 1284, 1308-09 (2011).

## VI. THE TWENTY-FIVE (25) UNLAWFUL SPAMS

45. Plaintiff alleges that Defendant engaged in tortious conduct: "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." *Tort*, BLACK'S LAW DICTIONARY (11th ed. 2019).

### A. The Emails at Issue are Unsolicited Commercial E-Mail Advertisements (*i.e.* "Spam")

46. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

47. Plaintiff received *at least* twenty-five (25) spams advertising Defendant's websites at Plaintiff's California e-mail address.

48. The e-mails at issue are "commercial e-mail advertisements"[7] because they advertise credit score monitoring provided by Defendant at the website *freescore360.com* and were initiated for the purpose of advertising and promoting Defendant's products or services.

[7] "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. Bus. & Prof. Code § 17529.1(c).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

49. The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiff never gave "direct consent" to Defendant, or any of its affiliates to send commercial e-mails.

50. Plaintiff has never had a "preexisting or current business relationship" with Defendant, or its affiliates.

51. Plaintiff did not opt-in to receive e-mails from Defendant's marketing agents. Even *if* Plaintiff had opted in to receive e-mails from Defendant's marketing agents—which Plaintiff denies—that would not constitute *direct* consent to Defendant, the advertiser in the spams. *See Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1099-1100 (1st Dist. 2012).

52. Plaintiff did not consent or acquiesce to receive the spams at issue. Plaintiff did not waive any claims related to the spams at issue.

53. Defendant advertised in, sent, and/or conspired to send *at least* twenty-five (25) unlawful spams that Plaintiff received at Plaintiff's "California e-mail address."

54. The spams are all unlawful because the spams contain or are accompanied by materially false and deceptive information, such as the use of third-party domain names without the third party's permission, and/or falsified, misrepresented, or forged information contained in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

**B.** **The Spam E-mails Contain or Are Accompanied By Third-Party Domain Names Without The Permission of the Third Party in Violation of Business & Professions Code § 17529.5(a)(1)**

55. Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

56. Sixteen (16) of the spam e-mails received by Plaintiff contain third-party domain names in the From field of the spam e-mails or in the body of the spam e-mails. The From field included the falsified, misrepresented, or forged third-party domain names *blueshieldca.com, unitau.br, centauro.br.com, and msi.com* in the Sender E-mail Address.

57. These third-party domain names were contained in the Sender E-mail Address field in headers of the spam e-mails and/or in the bodies of the spam e-mails.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

58. The "From" line field is part of e-mail headers. The From line has two distinctive parts: (1) the From Name, and (2) the Sender E-mail Address. For example, if an e-mail's "From" 'line states: "John Doe <johndoe@yahoo.com>", the From Name is "John Doe" and the Sender E-mail Address is "<johndoe@yahoo.com>."

59. The From Name in an e-mail's header is designed to identify *who* the e-mail is from. The Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules and standard protocols that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

60. The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a deliberate and material misrepresentation of the most important part of the e-mail header—not a mere clerical error.

61. Although Plaintiff *does not* bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message*." Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business (emphasis added).[8]

62. Plaintiff does not insist on any particular label (*e.g.*, "One Technologies," "FreeScore360," etc.) in the From Name field. Rather, Plaintiff contends that the text of a From Name field, whatever it is, cannot misrepresent *who* the e-mails are from.

63. Plaintiff is informed and believes and thereon alleges that the emails at issue here falsely

---

[8] *See* http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business.

1    list domain names owned by third parties without the permission of the third parties.

2  64.  Plaintiff is informed and believes and thereon alleges that Defendant uses third-party

3    domain names to deceive recipients into believing that these third parties have endorsed or

4    approved of Defendant's products and/or services.

5  65.  Plaintiff is informed and believes and thereon alleges that Defendant uses these third-party

6    domain names to use the good will of these third parties to trick the recipients into opening

7    the emails and purchasing Defendant's products and/or services.

8  66.  The third-party domain name *blueshieldca.com* is contained in one of the spam e-mails at

9    issue. Plaintiff is informed and believes and thereon alleges that third party Blue Shield of

10    California is the true owner of the domain name and did not give permission for its domain

11    to appear in or accompany any of the spams at issue in this complaint.

12  67.  The third-party domain name *unitau.br* is contained in one of the spam e-mails at issue.

13    Plaintiff is informed and believes and thereon alleges that third party Universidade de

14    Taubaté is the true owner of the domain name and did not give permission for its domain

15    to appear in or accompany any of the spams at issue in this complaint.

16  68.  The third-party domain name *centauro.com.br* is contained in one of the spam e-mails at

17    issue. Plaintiff is informed and believes and thereon alleges that third party Grupo SBF

18    S.A. is the true owner of the domain name and did not give permission for its domain to

19    appear in or accompany any of the spams at issue in this complaint.

20  69.  The third-party domain name *msi.com* is contained in one of the spam e-mails at issue.

21    Plaintiff is informed and believes and thereon alleges that third party Micro-Star

22    International Co., Ltd. is the true owner of the domain name and did not give permission

23    for its domain to appear in or accompany any of the spams at issue in this complaint.

24  70.  Plaintiff could see the third parties' domain names when Plaintiff viewed the spam e-mails

25    on Plaintiff's computer.

26  71.  There is no readily discernible connection between the above entities and Defendant and

27    no evidence that these entities consented to Defendant's use of their domain names in

28    connection with the sending of the emails at issue, in violation of Section 17529.5(a)(1).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

Nothing indicates that these third parties use affiliate marketers or have an affiliate program for advertising business for other websites, such as Defendant's websites.

72.     Such unauthorized use of third parties' domain names without permission is materially false and deceptive. Plaintiff is informed and believes and thereon alleges that Defendant and/or its marketing agents included the third-party domain names in order to: falsely lend an air of legitimacy to the spams by leveraging the brand equity of legitimate advertisers, making the recipients believe that the third-party endorses Defendant; and trick recipients and e-mail filters as to the source of the spam e-mails. If Defendant and its marketing agents used their own domain names, it would be more likely that spam filters and recipients would be able to identify the domain names as being associated with spammers, and block or disregard the spams. On the other hand, e-mails purportedly sent by the third party are more likely to be treated as legitimate e-mails and not spams, and therefore not blocked by e-mail filters or disregarded by recipients.

73.     The unsolicited commercial emails Plaintiff received advertising Defendant violate Section 17529.5(a)(1) because the e-mail advertisements contain or are accompanied by a third-party's domain name without the permission of the third party, which misrepresents the identity of the sender, misappropriates the identity of the true owner of the third-party domain name, and falsely represents that the sender has a legitimate relationship with the third-party domain name's true owner.

74.     Moreover, the emails Plaintiff received did not actually come from the purported domain names, and thus contain materially false, forged, deceptive, or misleading information in violation of Section 17529.5. *See Silverstein v. Keynetics, Inc.*, 2016 U.S. Dist. LEXIS 180174 (N.D. Cal. 2016).

75.     The emails Plaintiff received were also materially false and deceptive because there was falsified, forged, or misrepresented to indicate that the sender was an actual person or entity known to Plaintiff, when the emails were, in fact, nothing but advertisements sent by Defendant or its agents. *See Hoang v. Reunion.com, Inc.*, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. 2010); *Tagged Inc. v. Doe*, 2010 U.S. Dist. LEXIS 5428 (N.D. Cal. 2010).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**COMPLAINT**

76. Furthermore, the spam e-mails also misrepresented the sender of the spam e-mails through the use of falsified and forged information, in violation of Section 17529.5(a)(2).

C. **The Spam E-mails Contain Header Information That Is Materially Falsified or Misrepresented Because They Use Sender Domain Names That *Neither* Identify the Actual Sender *Nor* Are Readily Traceable to the Sender in Violation of Business & Professions Code § 17529.5(a)(2)**

77. The spam emails Plaintiff received included e-mail advertisements that contained or were accompanied by materially falsified, misrepresented, or forged header information in violation of Section 17529.5(a)(2) because they include a generic From Name, an untraceable sending domain name, and no information in the body which could be used to readily identify the sender or advertiser.

78. Plaintiff received spam e-mails from sender domain names that did not identify the actual sender and which were not readily traceable to the sender from the body of the spam e-mails or by using a publicly available online database, such as WHOIS.

79. Defendant engaged in acts of material falsity and deception by deliberately using untraceable, privately and/or "proxy" registered domain names to conceal its identity from the recipients of its spams.

80. The senders of the spam e-mails deliberately registered the domain names in a manner that prevents recipients from identifying who actually sent the e-mail, and are materially false and deceptive.

81. Thus, the untraceable domain names used in the spam e-mails to advertise Defendant affirmatively and falsely represent both the identity of the sender and that the sender has no connection to Defendant. *See Balsam v. Trancos, Inc.,* 203 Cal. App. 4th 1083, 1098.

82. Furthermore, since these spam e-mails were not actually sent from the domain names that appear in the Sender E-mail Addresses, the spam e-mails misrepresented the sender of the spam e-mails through the use of falsified, misrepresented, and forged information.

//

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

### i. The Spam E-mails Contain or Are Accompanied By Generic or False "From Names" That Do Not Identify the Sender and Misrepresent *Who* Is Advertising in the Spams in Violation of Business & Professions Code § 17529.5(a)(2)

83. Section 17529.5(a)(2) prohibits spams containing or accompanied by falsified, misrepresented, or forged header information.

84. All of the spam e-mails that Plaintiff received advertising Defendant's websites contained forged, falsified, or misrepresented header information and had From Names that misrepresented *who* the spams were from, and therefore violated Section 17529.5(a)(2).

85. Here, the spam emails at issue include generic From Names (*e.g.*, "AARONTHICKS" and "CONFIRM AARONTHICKS"). These generic From Names misrepresent *who* is advertising in the email, and therefore violate Section 17529.5(a)(2).

86. The use of these generic From Names is false and misleading because they do not identify the sending party or advertiser and cannot be readily traced back to the true owner/sender. The use of these From Names is also intended to prevent recipients from being able to identify Defendant as the true source of the emails.

87. Plaintiff is informed and believes and thereon alleges that Defendant knowingly chose to advertise using generic From Names precisely so that recipients will *not* know who the emails are really from when viewing the spams in the inbox view. This forces recipients to open the emails to see if the emails might actually be from someone with whom the recipient has had dealings, or if the emails are in fact, as is the case here, nothing but spams.

88. Defendant intentionally used privately registered, proxy-registered, or fraudulently registered domain names in order to prevent spam e-mail recipients from being able to identify Defendant as the sender or to contact Defendant regarding the unsolicited commercial e-mail advertisements.

89. There is no way that ordinary, reasonable consumers, looking at the same or similar emails, could readily associate them with Defendant, the true advertiser and beneficiary of the spam emails, and the sender's identity is not readily ascertainable from the body or content

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

of the spam emails, which did not readily identify the actual sender of the e-mails or Defendant.

90. These generic, forged, falsified, or misrepresented From Names are utterly ambiguous as to *who* the spam e-mails are from, and contain misrepresented information because the spams are not from these purported senders. In fact, the spams could just as easily have come from Defendant's competitors or some other entity or individual.

91. In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the sender's official corporate name as long as the identity of the sender was readily ascertainable in the body. 230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014). However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites. But here, unlike the spams in *Rosolowski*, the From Names are generic and are not well-known trademarks or brands readily associated with Defendant. There is no way an ordinary consumer, looking at the same or similar email From Name in their inbox, could readily associate them with Defendant.

## ii. **The Spam Emails Were Sent From Domain Names Registered in a Manner That Prevents Them From Being Readily Traceable to the Sender in Violation of Business & Professions Code § 17529.5(a)(2)**

92. Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained in or accompanying e-mail headers.

93. Registration information for the domain names used to send spams is information contained in or accompanying e-mail headers.

94. "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of Section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS" and the sender's identity is not readily ascertainable from the body of the e-mail." *See Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original); *Rosolowski*, 230 Cal. App. 4th at 1417.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

95. The spams that Plaintiff received advertising Defendant were sent from domain names that were "proxy" registered, forged, fraudulently registered, or which do not actually exist, and thus were not readily traceable to the sender by querying the WHOIS database, in violation of Section 17529.5. *See Balsam*, 203 Cal. App. 4th at 1097-1101. Examples include the following: *blueshieldca.com, unitau.br, centauro.com.br, msi.com, dnsabr.com, isrvenvia.com, and 08KEIN6I2ZY2MFRJSPSHSJUF43715G.net.*

96. Plaintiff could not identify Defendant or its spamming affiliates who sent the spams at issue by querying the WHOIS database for the domain names used to send the spam e-mails at issue.

97. Plaintiff is informed and believes and thereon alleges that there is no database online where an email recipient could find any Defendant by searching for or tracing the From Names.

98. Thus, the spam e-mails received by Plaintiff advertising Defendant were not readily traceable to the sender by querying the WHOIS database, in violation of Section 17529.5. *Balsam*, 203 Cal. App. 4th at 1097-1101.

99. Here, the From Name fields in the headers of the spam e-mails contained or were accompanied by generic From Names that neither disclose the true sender's identity nor permit the recipient to readily identify the sender. Therefore, such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity in violation of Section 17529.5(a)(2). *See Balsam*, 203 Cal. App. 4th at 1097.

**D. The Spam Emails Have Subject Lines That Are Materially Misleading Relative to the Contents of the Emails in Violation of Business & Professions Code § 17529.5(a)(3)**

100. Section 17529.5(a)(3) prohibits Subject Lines that are likely to mislead a reasonable recipient relative to the contents or subject matter of the e-mails.

101. Defendant advertised in spam e-mails that had Subject Lines that are likely to mislead a recipient acting reasonably under the circumstances about a material fact regarding the contents or subject matter of the e-mails.

102. The spam e-mails Plaintiff received from Defendant and/or its marketing affiliates, which advertised Defendant, included Subject Lines that are misleading relative to the subject

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

matter of the emails, in violation of Section 17529.5(a)(3).

103.  The Subject Line "Your_Creedit..Score_Has_Beeen.CHANGED..'**PLEASE REVIIEW**..{2019.07.13}_____ DRF" is found in several of the spam e-mails. Additionally, the "From Names" include "AARONTHICKS" and the bodies includes text such as "Your Credit Score Has Changed" and "Your Trans Union Score looks up 67 points, Experian looks up 61 points." The Subject Line, relative to the content or subject matter of the e-mails, is likely to mislead a recipient acting reasonably under the circumstances, is materially false, and is likely to mislead a recipient into believing that the recipient's credit score has changed, specifically by 67 or 61 points. However, Defendant is unaware of the recipient's credit score, the points increase is entirely fabricated, and the emails are nothing, but commercial advertisements sent by Defendant and/or its marketing affiliates. Moreover, Defendant's use of the recipient's name, Aaron T Hicks, in conjunction with the subject line "PLEASE REVIEW" is likely to mislead a recipient acting reasonably under the circumstances into believing the recipient is actually the sender of the email and the recipient wrote the contents of the email or has already read the email.

104.  Thus, each of the Subject Lines, even when viewed in conjunction with the body of the e-mail, is materially false and deceptive and likely to mislead a recipient acting reasonably about a material fact regarding the content or subject matter of the message.

**E. Defendant is Strictly Liable for the Spam E-mails Sent By its Marketing Agents**

105.  Plaintiff is informed and believes and thereon alleges that Defendant contracted with third-party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

106.  Defendant knowingly, intentionally, and voluntarily chose to outsource their advertising to third-party spam networks and spammers.

107.  Advertisers are liable for advertising in spam e-mails, even if third parties sent the e-mails:

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

advertisers who benefit from the marketing derived from the advertisements." (Bus. & Prof. Code § 17529(j)(k).) "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…"

Bus. & Prof. Code § 17529.5 (emphasis added). Thus, Defendant's agents are also liable for sending the unlawful spams.

108. Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added).

109. In fact, in *Hypertouch*, the court of appeal held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.

> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

*Id.* at 820-21. The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute. *Id.* at 829.

110. Moreover, Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in third-party domain names, From Names, domain name registrations, and Subject Lines, as described herein.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

111. Forged Sender E-mail Addresses do not write themselves. The false and misrepresented information contained in and accompanying the e-mail headers are not "clerical errors." Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to materially deceive recipients, Internet Service Providers, and spam filters.

112. Plaintiff is informed and believes and thereon alleges that Defendant has knowledge that its affiliates/marketing agents engage in the sending of false and deceptive spam.

113. Plaintiff is informed and believes and thereon alleges that Defendant and its marketing agents intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

**D. No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Sues for Statutory Liquidated Damages**

114. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

115. Plaintiff is informed and believes and thereon alleges that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

116. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

117. Section 17529.5 does not require Plaintiff to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. Recipients of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

118. However, Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California e-mail

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiff does not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

119.   Plaintiff is informed and believes and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

## FIRST CAUSE OF ACTION
### [Violations of California Restrictions on Unsolicited Commercial E-mail,   California Business & Professions Code § 17529.5]
### (Against All Defendants)

120.   Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

121.   Plaintiff received the spam e-mails within one year prior to filing this Complaint.

122.   Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent *at least* twenty-five (25) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses that had materially falsified, forged and/or misrepresented information contained in or accompanying the e-mail headers, and third-party domain names without the permission of the third party, in violation of Bus. & Prof. Code § 17529.5.

123.   Plaintiff is informed and believes and thereon alleges that some of the emails use hypertext markup language ("HTML") in the body which reference remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Many email clients automatically block remote images preventing recipients from seeing the sender upon initially opening the email.

124.   A remote image is *not* actually part of the email body, but rather is a link to an image hosted on a remote web server that could be anywhere on the Internet and controlled or manipulated by Defendant or an unknown third party. *See ZooBuh, Inc. v. Better Broadcasting, LLC* 2013 U.S. Dist. LEXIS 77033 *22 n. 29 (D. Utah 2013).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE DI
COSTA MESA, CA 92626

125. Some spammers use remote hosted images to detect when emails are opened to detect active email addresses so that the spammer can either resell the email address and/or direct more emails to active email addresses which open emails.

126. Plaintiff is informed and believes and thereon alleges that most email clients, including Plaintiff's, automatically block remote hosted images in spam as a security measure to prevent spammers from detecting active email addresses.

127. The use of remote hosted images permits the senders to make the emails "self-destructing" in order to hide the identities of the Defendant and to avoid responsibility for Defendant's deliberately misleading unsolicited email advertisements and illegal activities.

128. The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

129. The California Legislature set liquidated damages at one thousand dollars ($1,000) per e-mail.

130. Plaintiff seeks reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

131. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

- Liquidated damages of $25,000 against Defendant in the amount of $1,000 per each of the twenty-five (25) unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

- Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

- Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

- Costs of suit.

- Such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

132. Pursuant to the California Constitution and California Code of Civil Procedure § 631, Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 12, 2020                    Respectfully submitted,

                                        **KAZEROUNI LAW GROUP, APC**


                                        By: _____
                                            DAVID J. MCGLOTHLIN, ESQ.
                                            VERONICA CRUZ, ESQ.
                                            *Attorneys for Plaintiff*